Joseph SANTORO;  Grace Santoro,
Plaintiffs–Appellants,

v.

CTC FORECLOSURE SERVICE COR-
PORATION;  Country Funding Corp.,
Defendants–Appellees.

No. 99–56972.
D.C. No. CV–97–01297–BTM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 2001.

Decided March 20, 2001.

Before B. FLETCHER,
FERNANDEZ, and PAEZ, Circuit
Judges.

## MEMORANDUM [1]

Joseph and Grace Santoro brought an action alleging violations of the state and federal Fair Debt Collection Practices Act ("FDCPA"), and the federal and state Truth In Lending Acts ("TILAs") against a loan servicing company, Countrywide Funding Corporation ("Countrywide"), and the substituted trustee, CTC Foreclosures Services ("CTC"). The district court granted summary judgment in favor of the defendants with respect to several claims and gave the plaintiffs leave to file an amended complaint. Following the Santoros filing of an amended complaint, the district court dismissed the remaining claims pursuant to Fed.R.Civ.P. 12(b)(6). We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In June 1994, the plaintiff-appellants, Joseph and Grace Santoro, refinanced their home by borrowing $341,000 from First California Mortgage Company. By the end of 1994, Countrywide had purchased the full servicing rights to the loan.

For nearly two years, the Santoros made their regular payments to Countrywide. In December 1996, however, they defaulted on the loan. In February 1997, Countrywide notified the Santoros in writing that they were in "serious default." On March 25, 1997, the loan was referred within Countrywide to its "Workout Department." The Workout Department sent the Santoros a letter dated April 1, 1997, that explained a variety of payment options. At this time, the second defendant-appellee, CTC, was substituted as the trustee on the mortgage and took over issues regarding the delinquent loan.

In a letter dated April 2, 1997, counsel for plaintiff informed Countrywide that he was representing the Santoros and that they were exercising a purported right to recission based on violations of the federal TILA, 15 U.S.C. §§ 1600, et. seq., at the inception of the loan. CTC received this letter by fax on April 9, 1997. On April 10, Countrywide sent the Santoros another letter informing them of their serious default and offered a workout option.

After repeated attempts to have Countrywide and CTC recognize the recission, the Santoros filed a complaint in district court alleging violations of the state and federal TILAs; the state and federal FDCPAs; and, based on the TILA and FDCPA violations, unfair competition claims under California Business and Professions Code §§ 17200 and 17500. In addition to damages, the Santoros sought a temporary restraining order to enjoin the defendants from proceeding with the sale of the home. The district court granted the TRO contingent upon the Santoros bringing their payments current by July 22, 1997. The Santoros failed to meet this payment requirement and the foreclosure sale went forward.

With the foreclosure sale final, the defendants brought a motion for summary judgment on the remaining claims. The court, partially granting defendants' motion for summary judgment, dismissed the Santoros' claims alleging violation of the federal and state TILAs against Countrywide and CTC, as well as the claims against Countrywide alleging violation of the federal FDCPA. As to the remaining claims, the district court denied the motion for summary judgment with regard to state FDCPA and unfair competition claims against both Countrywide and CTC.

---

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Cir. R. 36–3.

Finally, the district court granted leave for the Santoros to file an amended complaint that states a claim against CTC for violation of the federal FDCPA.

The Santoros filed an amended complaint on May 8, 1998. Countrywide and CTC filed a 12(b)(6) motion with respect to all of the remaining claims in the amended complaint. In its September 4, 1998 Order, the district court granted the defendants' motion to dismiss each of the Santoros' remaining causes of action for failure to state a claim. The district court again granted leave for the Santoros to file a second amended complaint for the purpose of alleging facts to demonstrate a claim against CTC under the federal FDCPA. Rather than amending the first amended complaint, the Santoros appealed the district court's two orders. Another panel dismissed the appeal for lack of jurisdiction because the district court's order was not a final judgment. *Santoro v. CTC Foreclosures Servs. Corp.*, 193 F.3d 1106 (9th Cir.1999). On October 8, 1998, the Santoros waived their right to amend. The district court entered a final order dismissing the action with prejudice on November 19, 1999. The Santoros timely appealed from the summary judgment and 12(b)(6) dismissals resulting from both of the district court's orders.

## STANDARD OF REVIEW

We review the district court's April 8, 1998 Order granting summary judgment *de novo* and determine whether there are any genuine issues of material fact. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998). We also review *de novo* the district

court's September 4, 1998 Order granting the defendants' 12(b)(6) motion to dismiss for failure to state a claim. *Monterey Plaza Hotel, Ltd. v.. Local 483*, 215 F.3d 923, 926 (9th Cir.2000).

## DISCUSSION

### I. TILA CLAIMS

■ In its April 8, 1998 Order, the district court granted the defendants' motion for summary judgment as to all causes of action under the federal TILA. The Santoros had claimed that they were entitled to rescind the loan [2] and receive civil damages based upon the original lender's inaccurate disclosure of the finance charge, which did not include a $4,688.75 mortgage broker fee. In concluding that there was no TILA violation, and therefore no extended recission period or civil liability, the district court found that under the law in effect at the time of the transaction the Santoros' mortgage broker fee need not have been included in the mandatorily disclosed "finance charge." The Santoros dispute this conclusion on appeal.

Lenders are required under TILA to disclose "finance charges," a term defined in 15 U.S.C. § 1605(a) as: "the sum of all charges payable directly or indirectly by the person to whom the credit is extended," subject to certain exceptions. In 1995, more than a year after the Santoros' loan closed, Congress amended TILA to provide that finance charges include "borrower-paid mortgage broker fees." 15 U.S.C. § 1605(a)(6). The same 1995 amendments make explicit that prior to

---

**2.** TILA creates certain recission rights as a means of protecting consumers. Under 15 U.S.C. § 1635 there are two recission possibilities for home mortgage borrowers. The standard recission is granted in any credit transaction where a security interest in the borrower's home is recorded. Pursuant to it,

the borrower has three days to rescind the transaction. § 1635(a). If, however, accurate information on material factors in the transaction is not delivered to the borrower at the closing, the period of recission is extended for three years, or until such accurate information is delivered. § 1635(f).

September 30, 1996, borrower-paid mortgage broker fees were not part of the finance charge in closed-end consumer credit transactions secured by real property. 15 U.S.C. § 1649(a)(1)(D). The Santoros loan was a closed-end consumer credit transaction secured by real property.

On appeal, the Santoros argue that this § 1649 lender protection provision does not apply under 15 U.S.C. § 1635(i)(1) where the consumers' home is in foreclosure. Section 1635(i)(1) states:

> Notwithstanding section 1649 of this title, and subject to the time period provided in subsection (f) of this section...after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section, if...(A)a mortgage broker fee is not included in the finance charge *in accordance with the laws and regulations in effect at the time the consumer credit transaction was consummated.*

(emphasis added). Thus, the relevant question is whether the Santoros' mortgage broker fee was properly excluded under the then current law.

The regulatory scheme at the time the loan transaction took place required disclosure of an amount charged by a mortgage broker if the use of the mortgage broker was required by the creditor as a condition of the extension of credit or if the creditor received part of the brokerage fee. *See Official Staff Commentary on Regulation Z,* 12 C.F.R. 226.4–4(a)(3) (*"Charges by Third Parties:* Charges imposed on the consumer by someone other than the creditor are finance charges (unless otherwise excluded) if the creditor requires the use of a third party as a condition of or incident to the extension of credit, even if the consumer can choose the third party, or the creditor retains the charge."); *see also Johnson v. Fleet Finance Inc.,* 4 F.3d 946 (11th Cir.1993). According to the stipulated facts, First California, the original lender, made loans available through both its wholesale and retail lending divisions. Retail loans were made available directly to consumers, whereas consumers would contact a loan broker to obtain a loan through the wholesale division. Furthermore, the Santoros presented no evidence that First California received any portion of the broker fee.

In light of these stipulated facts, the district court was correct in concluding that there was no genuine issue of material fact as to whether First California required the Santoros to use a mortgage broker in order to obtain a First California loan. *Accord Johnson,* 4 F.3d at 950 (affirming a summary judgment in similar circumstances where the borrowers presented no evidence that the lender required the borrower to use a broker). Therefore, under the law in effect at the time of the transaction, the mortgage broker fee was properly excluded from the TILA finance charge disclosure. Without an improper disclosure, there was no TILA violation. Without a TILA violation, there was no basis for the Santoros' attempt to exercise a delayed recission right nor to obtain civil damages under TILA.

Therefore, we affirm the district court's grant of the defendants' motion for summary judgment as to the TILA causes of action.

## II. FDCPA CLAIMS

In its April 8, 1998 Order granting summary judgment, the district court held that Countrywide was not a "debt collector" under the FDCPA because the Santo-

ros' mortgage was not in default at the time that it was acquired by Countrywide.[3] We need not decide whether Countrywide is a debt collector under the FDCPA because we hold that the conduct, as alleged, does not constitute "debt collecting."

■ In their first amended complaint, the Santoros made conclusory allegations that Countrywide and CTC violated the federal FDCPA, 15 U.S.C. § 1692c(a)(2) and the state equivalent, Cal. Civ.Code § 1788 .14(c)[4]. Pursuant to the statute, only communications "in connection with the collection of any debt" fall under the ambit of the Act. The violations complained of by the Santoros involved a few occasions in which the defendants contacted the Santoros directly after being notified that they were represented by counsel. The first contact was a letter from Countrywide offering a loan workout. A letter suggesting loan workout options is not seeking to collect the debt. *Bailey v. Security National Servicing Corp.*, 154 F.3d 384, 389 (7th Cir.1998) ("A warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the circumstances wherein payments are missed and a real dun must be mailed."). The second direct contact, statutorily required notice of the pending foreclosure sale of the property, was sent by CTC. *See* Cal. Civ.Code § 2924(b). CTC's foreclo-

sure sale notice also did not seek to collect the debt, the conduct forbidden under the statute. In light of the facts stipulated to by the parties, the lack of facts alleged by the Santoros in either the original or the amended complaint; the failure of the Santoros to amend their complaint a second time; and the Santoros conclusory allegations as to FDCPA violations in their briefs on appeal, it "appears beyond a doubt that the plaintiff[s] can prove no set of acts in support of [their] claim which would entitle [them] to relief" with respect to the federal and state FDCPA claims. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998) (citing *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997)).

We therefore affirm the district court's grant of the defendants' 12(b)(6) motion dismissing of the federal and state FDCPA claims against both defendants.

AFFIRMED.

---

**3.** The statute defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). The definition expressly excludes, "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to

the extent such activity...concerns a debt which was not in default at the time it was obtained by such person..." 15 U.S.C. 1692a(6)(f).

**4.** The state FDCPA prohibits the collection of a consumer debt by means of a communication with a debtor after a creditor has been notified the debtor is represented by an attorney.